37 133
53 531

JAMES McCOY v. THE OVERSEER OF THE POOR OF THE TOWN OF NEWTON.

1. The legal settlement of a bastard child is in the town or township where born, unless the mother then has a legal settlement elsewhere in the state, and the last residence by the mother for twelve months continuously in a township other than where the child was born, does not constitute such a legal settlement of the mother, as that the child could derive from it a settlement different from its place of birth.

2. Proceedings taken in the township where the mother last resided twelve months, on the application of the overseer of that township, are no bar to proceedings in the town where the child was born, taken by the overseer of that town.

On *certiorari* in case of bastardy.

Argued at February Term, 1874, before Justices BEDLE, DALRIMPLE and DEPUE.

For prosecutor, *Lewis Van Blarcom.*

For defendant, *Thomas Anderson.*

The opinion of the court was delivered by

BEDLE, J. This writ brings before us proceedings in bastardy had by two justices of the county of Sussex, on the application of the overseer of the poor of the town of Newton. On the hearing the alleged father offered to prove in bar that other proceedings had been previously taken on the application of an overseer of the poor in Frankfort township, said county, and that on the trial before the justices and jury, had

on that application, he had been acquitted of the charge of being the father. The child was born in the town of Newton, where the mother then resided. The defence offered was overruled, and the justices found McCoy to be the putative father, and made an order of filiation accordingly. The prosecutor now claims that these subsequent proceedings are illegal by reason of the previous trial on behalf of Frankfort township. Those proceedings in Frankfort are subject to severe criticism, on account of the hearing having taken place without the presence of the mother, although duly summoned, yet the question now involved does not depend upon that. Whether, in the present state of legislation on this subject, independent action may not be taken by the township where the child is born, and also where its legal settlement may be, for the better relief of each township, need not now be settled, for the proof before us shows that the legal settlement of this child was not in the township of Frankfort. That it may be taken in both has encouragement in the case of *Garwood* v. *Township of Waterford*, 3 *Dutcher* 436, but no opinion on that is intended. By section 4 of the poor act, (*Nix. Dig.* 706) the settlement of such children is in the place of the last legal settlement of the mother, unless the mother has a legal settlement at the time of the birth, the place of birth fixes the legal settlement of the child. The proceedings in behalf of Frankfort were based on the supposition that the mother had a legal settlement there, and that settlement is claimed under the second section of the supplement of March 19th, 1852, to the poor act (*Nix. Dig.* 715,) and as amended by section 2 of another supplement of February 25th, 1854, (*Nix. Dig.* 717.) The proofs show that although the mother was a resident of Newton at the time of the birth, and had immediately previous resided there several months, yet that before coming to Newton she had resided in Frankfort for twelve months continuously. It is said that such residence established the legal settlement of the mother. Section 2 of the act of 1852 provides for removal in two cases—one, where the person has obtained a legal settlement in the state, and the other, where no

legal settlement has been obtained, and in which latter case, the removal shall be to the township where two justices adjudge such person shall have last resided for six months continuously, there to be provided for according to law.   Section 2, of the supplement of 1858, in effect only changes the time from six to twelve months.   It was not intended by this legislation that the place to which removal is made on account of a twelve months' continuous residence, should be for all purposes considered as the place of legal settlement.   Such residence determines the question of relief of all persons who have not gained a settlement in the state, but does not carry with it the consequences of the legal settlements contemplated in the poor act.   This is clear, from the distinctions already referred to in each of sections 2, and also by a reference to the supplement of March 3d, 1857, (*Nix. Dig.* 716,) and also particularly to the supplement of February 28th, 1870, (*Nix. Dig.* 717.)   This latter act recites, by way of preamble, that, " whereas certain townships in this state have poor-houses located without their limits, and within the neighboring townships, and, in accordance with the laws of this state, *all legitimate children born therein of parents who have no legal settlement in this state, gain a legal settlement in the township where such poor-houses are*, therefore," &c., and then provides that the legal settlement of such persons shall be as though they had been born within the limits of the township from which their parents were legally entitled to relief.   It may be suggested that the act of 1860 applies as well to illegitimate as legitimate children, but the preamble and natural force of the whole section can extend only to such as are legitimate. Before that supplement, children, and persons having a settlement in this state, born at a poor-house, in a township other than the place of settlement, did not gain a settlement where born, (*Nix. Dig.* 711, § 16,) but in order to relieve the township in which the poor-house was located from the consequences of the birth of children of parents having no legal settlement, that supplement was passed fixing the settlement of the child in the township from which the parents were

entitled to relief. If that supplement included illegitimate children, perhaps Frankfort might be considered as the place of settlement of this child ; but, as it does not, it was not intended that the place from which the relief is entitled should, for all purposes, determine the place of settlement. That supplement contains a recognition of what would be the law as to legitimate children without it, viz. : that the mere fact of the parents being entitled to relief from a township, is not sufficient to constitute it a legal settlement, carrying with it the settlement of their offspring. Children for nurture may be obliged to follow their parents while of tender years, but that is different from a question of settlement in the statutory sense. Townships are bound to take care of casual poor, as well as those legally settled, and those merely residing twelve months in a township, may be regarded as of that class, and the legislation in that respect be considered as a mode of determining how that burthen shall be borne. In a qualified sense, the mother of this child could be considered as having a settlement in Frankfort—that is, so far as mere personal relief is concerned, but not as having a legal settlement in the statutory sense which would carry with it all the derivative consequences of such a settlement. Why the distinction is made, need not be discussed ; it is sufficient that it is clearly drawn in our statutes. It is also recognized in two cases. *Overseers of Paterson* v. *Overseers of Byram*, 3 *Zab.* 395 ; *Richardson* v. *Overseers of Burlington*, 4 *Vroom* 190. Frankfort was, therefore, not the place of the mother's legal settlement. She had no settlement in New Jersey from which another could be derived. She was only entitled to relief from Frankfort, if she needed it at any time before she had resided twelve months in Newton, or elsewhere in the state. The proceedings, on the application of the overseer of Frankfort, could not bind Newton, and the defence offered was rightly disregarded.

The proceedings brought up must be affirmed.