SIDNEY KAUFMAN, BY HIS NEXT FRIEND, SOLOMON KAUFMAN, APPELLANT, v. WILLIAM H. SMATHERS, JUDGE, IN BASTARDY PROCEEDINGS ON THE COMPLAINT OF MARGARET CARR, RESPONDENT.

Argued February 10, 1933—Decided May 15, 1933.

For the respondent Margaret Carr, *Samuel Levinson.*

For the appellant, *William B. Hunter, Jr.*

The opinion of the court was delivered by

KAYS, J.   This is an appeal from a judgment of the Supreme Court dismissing a writ of *certiorari* brought to review

the action of the Atlantic County Juvenile Court. The action in this case was brought by Margaret Carr, the mother of a bastard child, against Sidney Kaufman who, it was alleged was, and found by the jury to be, the father of said child.

The first point argued for reversal is that the Atlantic County Juvenile Court was not in existence at the time the action was brought for the reason that said court was abolished by an act entitled "An act to establish Juvenile and Domestic Relations Courts," and that, therefore, the action should have been entitled in the Juvenile and Domestic Relations Court of Atlantic county. The Supreme Court held that the inadvertent omission of part of the name of the court could not be seized upon to defeat a judgment otherwise beyond attack if the jurisdictional facts can be gathered from the case, and that since the prosecutor of the writ recognized the jurisdiction and entered into a bond that this omission of part of the title of the court was not fatal and did not render the order void. The case was tried before the judge and a jury. We might agree with the Supreme Court in this respect were it not for the fact that the proceedings were brought by Margaret Carr individually. It appears from the record of the case that a complaint was made by Margaret Carr to the judge of the Atlantic County Juvenile Court which set forth that the said Margaret Carr was a single woman, was pregnant with child which was likely to become a charge upon the city and requested the court to make inquiry into the facts and circumstances of the case and make such order of filiation as the statute should require. Margaret Carr was thereupon examined before the said judge and stated that the said child was likely to be born a bastard and likely to become chargeable to the city of Atlantic City and that Sidney Kaufman, of Atlantic City, was the father of said child. The next record appears to be a record of the bastardy action or proceedings before the court and is entitled "Atlantic County Common Pleas Court, May term, 1930," which sets forth the date and place of the trial, the names of the witnesses and the direction of the court to the jury. The next record is an order for support and appears to be entitled,

"Juvenile Court of the County of Atlantic, New Jersey, the State of New Jersey v. Sidney Kaufman." This order sets forth that Sidney Kaufman was adjudged by a jury to be the father of the bastard child and directs Kaufman to pay to the chief probation officer of Atlantic county, for the support of said bastard child, the sum of $6 weekly, and also $75 for confinement expenses of the mother. It further provides that the said Kaufman enter into a bond to Henry S. Scull, chief probation officer of Atlantic county in the sum of $1,000 with proper security for the faithful performance of the conditions of the order and in default thereof that he be committed to the county jail. Among other things the bond provides that the said Kaufman should faithfully obey the order and such other orders as may be made in case an appeal be taken. A rule to show cause was allowed and argued before Judge Smathers which was dismissed. The Supreme Court held that under *Pamph. L.* 1929, *p.* 274, which was the act establishing Juvenile and Domestic Relations Courts, this proceeding might be instituted by complaint or petition and verified by the person making the same and, therefore, it was not necessary that the action be brought in the name of the overseer of the poor and that because this point was not raised before judgment was entered in the Juvenile and Domestic Relations Court, and was raised for the first time on the return of the rule to show cause it was not available before the Supreme Court. We are of the opinion that the Supreme Court erred in regard to this point. Assuming that bastardy proceedings were cognizable before the Juvenile and Domestic Relations Court of Atlantic county the action in that court is founded upon an act entitled "An act for the maintenance of bastard children (Revision of 1898)." 1 *Comp. Stat.* 1910, *p.* 184. This act provides among other things that if any woman shall be delivered of a bastard child, which shall be chargeable or likely to become chargeable to any township; or declares herself to be pregnant of a child likely to be born a bastard, and to become chargeable to any township, any overseer of the poor of the township where such woman may be, or of the township wherein the legal settlement of such woman

may be, may apply to a magistrate of the same county, &c., * * * to make inquiry into the facts and circumstances of the case. The act then provides for the examination and proceedings before the magistrate and a jury, provides that if the father is found guilty the magistrate shall make an order of filiation in which he shall specify the sum of money to be paid and that the father shall enter into a bond to the State of New Jersey in such sum as the magistrate shall direct with proper sureties and will indemnify each and every of the townships of this state which may have incurred any costs or expense for the support of such bastard, or child likely to be born a bastard, or its mother during her confinement or for any proceedings arising therefrom. The act further provides that the penalty of every such bond which shall be taken for the appearance of any such reputed father or for indemnifying the townships, shall in all cases be such a sum as shall insure a full indemnity to every township in the state for the expense that has been or which may be incurred by reason of supporting such bastard and its mother during her confinement and the cost of all proceedings connected therewith. The term "township" in the act is extended to include cities, &c. It seems from the provisions of this act that its very object is to protect the municipality from expense of maintaining bastard children and that this is the only reason for the existence of the act. This being so the next question is whether the failure to bring the action in the name of the overseer of the poor invalidated the proceedings. It is contended on the part of the respondent that because the question of jurisdiction was not raised before judgment, that it could not be entertained by the Supreme Court nor here on appeal. The question before the Supreme Court and before us is one which goes to the very subject-matter of the suit. Such jurisdiction cannot be conferred by consent or acquiescence. A judgment which is pronounced by a court having no authority to determine the matters at issue is void and may be raised on the return of the writ of *certiorari* even though it was not raised at the trial. It is a question whether or not the Juvenile Court was vested with power to take cog-

nizance of the cause and is, therefore, a question of jurisdiction over the subject-matter of the action. This cannot be conferred by consent nor can the right to object to the want of such jurisdiction be lost by acquiescence of the parties. The Supreme Court held in effect in the case of *Fautz* v. *Juvenile Court,* 6 *N. J. Mis. R.* 586; 142 *Atl. Rep.* 350, that the procedure in bastardy cases tried before Juvenile and Domestic Relations Courts must follow the act above referred to entitled "An act for the maintenance of bastard children (Revision of 1898)," and set aside a conviction, which was instituted by persons other than the overseer of the poor under a section of the act relative to Juvenile and Domestic Relations Courts, as unconstitutional. We have been unable to find any procedure which may be brought by the woman in a civil action against the father of her bastard child which would enable any court or magistrate to make an order requiring the father to pay a weekly sum to the county probation officer. The county probation officer would not be required to use this fund for the support of such child unless such child became a county charge. The entire theory of the act is that the municipalities of the county shall be protected against the cost of maintaining the bastard child and for this reason the suit must be brought by the overseer of the poor who has charge of the maintenance of persons who become charges upon the municipality. The act is for the protection of taxpayers and people of the municipality and not for the benefit of the mother as it may become the duty of the municipality to care for the mother during her confinement and to care for and maintain the child if the mother and father fail to provide for and maintain it. It, therefore, seems to us that the court could not obtain jurisdiction of this case unless the action was brought by the overseer of the poor by whom the statute requires the action shall be brought. The action can be maintained only for the relief of the municipality in which such child may have been born or for the relief of such municipality in this state into which such child may be removed and not for the relief of the mother for the mother may become separated from the child and move out of the

state and the child may still remain in the state and be a charge upon a municipality of the state. This has long been the rule in this state. Judge Pennington said in an anonymous case in 3 *N. J. L.* 872, referring to a bastardy case:

"The power given to the justices in cases of bastardy, is not for the purpose of settling disputes between the father and mother, respecting the maintenance of the child, or for taking money from the father and giving it to the mother; but to protect and indemnify the town from its liability to maintain the child."

This same rule was laid down by Mr. Justice Dixon in the case of *Stoll* v. *Overseer of Walpack,* 38 *N. J. L.* 200, wherein he discusses the bastardy act which was then in effect and which does not differ in principal from the one now on our statute books. He says:

"Sections 2, 3 and 4, which are taken from 6 *Geo. II,* are mainly to secure the person of the reputed father pending the question of his liability, while the act of March 18th, 1858, is chiefly designed to give the reputed father an opportunity of having that question passed upon by a jury, before the order of affiliation is made. In this question the mother has, legally, no concern, and she may not appear as a party, but that is merely an issue of fact raised by the putative father in the course of the proceedings before the justices, which, at his request, they are required to submit to a jury, and as soon as that issue is found against him, and the verdict of the jury recorded by them, they go on to judgment in the proceedings instituted before that side trial was demanded. The parties to these original proceedings remain the same and it is quite evident that these parties are the township or its overseer upon the one side, and the father and mother upon the other."

It, therefore, appears that the court could not obtain jurisdiction of the case under the bastardy act above referred to unless the suit was brought in the name of the overseer of the poor as required by the statute.

The judgment under review is, therefore, reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ.   11.