11 N.J. Super. 250 (1951)
78 A.2d 272
STATE OF NEW JERSEY, CITY OF BRIDGETON, BY BART GUMPART, OVERSEER OF THE POOR, PLAINTIFF-RESPONDENT,
v.
STANLEY WEISS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1951.
Decided January 18, 1951.
*251 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. William Gallner argued the cause for plaintiff-respondent.
Mr. Edward S. Miller argued the cause for defendant-appellant (Mr. David C. Harper, attorney).
The opinion of the court was delivered by WM. J. BRENNAN, JR., J.A.D.
An illegitimate child was born on April 12, 1949, in Bridgeton Hospital, at Bridgeton, Cumberland County. The child's mother, whose home, and legal settlement, was in Pleasantville, Atlantic County, had come to the hospital from Pleasantville for the sole purpose of her confinement, and upon discharge had returned with the child to Pleasantville. Several months later, in January, 1950, the Overseer of the Poor of Bridgeton, at the request of the mother, who with the baby was still living at the time in Pleasantville, initiated a bastardy proceeding against the defendant in the Bridgeton Municipal Court under R.S. 9:17-2, as amended by P.L. 1949, c. 141. Defendant unsuccessfully challenged the jurisdiction of the Municipal Court and an order under the statute was made against him. He appealed to the Cumberland County Court, R.S. 9:17-20, and at the hearing on the appeal raised the single question of jurisdiction. The County Court on June 30, 1950, entered the order before us for review, dismissing defendant's appeal from the order of the Municipal Court and holding that "jurisdiction, in bastardy matters, resides in the place where the child is born, and the Magistrate's Court of the City of Bridgeton, as well as this Court, has jurisdiction."
The order of the County Court will be reversed. Although the child was born in Bridgeton, the mother was not living in that municipality when the proceeding was brought, and Pleasantville, her legal settlement, where she was living, is a municipality of Atlantic County, not of Cumberland County. The statute invests jurisdiction in any magistrate of a county, *252 but only if at the time the proceeding is initiated the mother is living in a municipality of that county, which municipality, also, is either that in which the child is born, or is likely to be born, or that of the mother's legal settlement. Section 9:17-2, as amended in 1949 provides:
"If a woman is delivered of an illegitimate child or declares herself to be pregnant of a child likely to be born illegitimate, which is or is likely to become a public charge, a duly authorized representative of the State Board of Child Welfare or an overseer of the poor of the municipality where the woman is, or of the municipality wherein she has a legal settlement, may, by complaint, apply to a magistrate of the same county wherein the woman is, to make inquiry into the facts and circumstances of the case; provided, however, that the initiation of proceedings under this chapter shall in no wise be deemed a condition precedent nor a deterrent to the granting of assistance or relief under any law of this State to persons otherwise eligible therefor."
Originally the proceeding was maintainable only by the overseer of the poor of the municipality in which the child was born or was likely to be born, so that, the mother living there, the child was, or was likely to become, chargeable to the municipality. Act of February 26, 1795, Rev. 1821, p. 171; Dally v. Overseers of Woodbridge, 21 N.J.L. 491 (Sup. Ct. 1848); Quick v. Overseer of Amwell, 3 N.J.L. 569 (Sup. Ct. 1813); Hawkins v. State, 21 N.J.L. 630 (E. & A. 1845); Nottingham v. Amwell, 21 N.J.L. 27 (Sup. Ct. 1848). By Act of March 1, 1851 (Laws of 1850-51, p. 137) authority to maintain the proceeding was given also to the overseer of the poor of the municipality in which the mother had her legal settlement at the time of the child's birth if subsequently the mother again took up her residence there. Garwood v. Township of Waterford, 27 N.J.L. 436 (Sup. Ct. 1859); McCoy v. Overseer of Poor of Newton, 37 N.J.L. 133 (Sup. Ct. 1874). Later revisions of the statute in 1874 (Rev. 1709-1877, p. 70) and 1898 (P.L. 1898, c. 241, p. 959), continued both provisions which were codified in the Revision of 1937 as R.S. 9:17-2. The requirement, implicit in the earlier statutes, that the mother be living in either such municipality of the county at the time the proceeding *253 was brought before a magistrate of the county, was made explicit in the 1874 Revision in the wording authorizing the bringing of the action by the overseer of the poor of either such municipality "where such woman may be," and in the 1937 Revision, and present text, "where the woman is."
The cases under the statute prior to its 1949 amendment emphasized that its purpose was to protect the municipality where the child was born, or was about to be born, or had its legal settlement (which at birth becomes the same as that of the mother, Rev. 1821, p. 36; and see R.S. 44:8a-13), against the cost of maintaining the child. Hence, the jurisdictional requirement that the mother be living in such municipality when the overseer initiated proceedings. "The act is for the protection of taxpayers and people of the municipality and not for the benefit of the mother, as it may become the duty of the municipality to care for the mother during her confinement and to care for and maintain the child if the mother and father fail to provide for and maintain it." Kaufman v. Smathers, 111 N.J.L. 52 (E. & A. 1933); Tuohy v. Boynton, 5 N.J. Super. 265 (App. Div. 1949). If the mother desires to bring her own suit against the reputed father for support of herself and the infant, she may do so under other statutes; see, for example, R.S. 9:16-3 and R.S. 9:18-14, as amended by P.L. 1946, p. 268, § 2. Tuohy v. Boynton, supra; Cortese v. Cortese, 10 N.J. Super. 152 (App. Div. 1950).
Municipalities, however, no longer have the ultimate burden of the expense of maintaining illegitimate children. Chapter 5 of Title 30 of the Revised Statutes, which is derived from P.L. 1936, c. 33, p. 74, vests the care and general supervision of such children, among others, in the State Board of Children's Guardians, now the State Board of Child Welfare, (P.L. 1947, c. 257, p. 938, § 1), and provides that the cost of assistance granted under that statute on behalf of any child shall be shared, where the child is living with its mother, in the proportions of three-fourths by the State and one-fourth by the county in which the child is resident. R.S. 30:5-7 and 8.
*254 The Legislature enacted chapter 141 of the Laws of 1949 in apparent recognition that the laying of this financial burden upon the State and counties required that a state agency be empowered to maintain proceedings to establish responsibility on the part of natural fathers of illegitimate children, and thus to conserve public funds. The amendment accordingly authorizes the State Board of Child Welfare, in addition to the named overseers, also to initiate such proceedings against reputed fathers, revising the requirement that the child "is or is likely to become chargeable to a municipality" to read, consistent with the change, "is or is likely to become a public charge."
The 1949 amendment did not, however, alter or repeal the jurisdictional provisions that the proceeding, to be valid, must be brought in a magistrate's court of the county, in a municipality of which the mother is living at the time the proceeding is initiated, which municipality, also, is either that where the child is born, or is likely to be born, or that of the mother's legal settlement. It will be noted that the question of jurisdiction is not affected by any consideration of the residence of the reputed father. The statute, however, expressly provides a method for service of the warrant upon the reputed father in any county where he may be found. R.S. 9:17-5.
Reversed. No costs.