ROSE MARIE LEONARD, PLAINTIFF-RESPONDENT, v.
FRANK WERGER, DEFENDANT-APPELLANT.

Argued April 23, 1956—Decided May 14, 1956.

*Mr. John W. Hand* argued the cause for appellant (*Messrs. Evans, Hand and Evans,* attorneys; *Mr. Hand* of counsel; *Mr. William W. Evans, Jr.,* on the brief).

*Mr. David Cohn* argued the cause for respondent (*Mr. Albert L. Cohn* on the brief).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.  In this filiation proceeding the Magistrate of the Clifton Municipal Court dismissed the complaint of the plaintiff mother filed in her own name against the defendant putative father.  She appealed to the Passaic County Court.  There was a trial *de novo* in the County Court before a jury and the jury returned a verdict that the defendant was the father of plaintiff's child born out of wedlock.  An order of filiation in usual form was thereupon entered against the defendant.  Defendant sought by motion heard by the Assignment Judge of Passaic County

to vacate the order upon the ground, asserted for the first time, that the plaintiff mother had no right of appeal to the County Court as no statute expressly allows the mother who brings a filiation proceeding in a municipal court the right of appeal to a County Court from a determination adverse to her. The motion was denied, and defendant appealed to the Appellate Division. We certified the appeal here on our own motion.

The instant action by the mother is not the conventional bastardy proceeding provided for under *chapter* 17, found in *N. J. S. A.* 9:17-1 *et seq.* That chapter is the current version in the unbroken line of bastardy statutes which originated with the enactment of the act of February 26, 1795 (*Rev.* 1821, *p.* 171), *Borawick v. Barba,* 7 *N. J.* 393 (1951); *State v. Weiss,* 11 *N. J. Super.* 250 (*App. Div.* 1951). Those statutes have been consistently purposed to protect the public against becoming charged with the support of a child born out of wedlock and for that reason a proceeding under *chapter* 17 is maintainable only by a duly authorized representative of the State Board of Child Welfare or by the appropriate municipal director of welfare upon a showing that the child is or is likely to become a public charge. *State v. Weiss, supra.*

But in 1929 the Legislature enacted *chapter* 153 of the *Laws* of that year, now *N. J. S. A.* 9:16-2 to 4, inclusive (which we shall here refer to as *chapter* 16) and created a right of action by either parent against the other, or by the person having physical custody of the child against either or both parents, to enforce the obligation of the parents, provided by the statute, to support and educate the child to the same extent as if the child was born in lawful wedlock. Such remedies are expressly made cumulative of the remedies contained in *chapter* 17, *N. J. S. A.* 9:16-4. An action by the State Board of Child Welfare or a municipal director of welfare under *chapter* 17 is significantly different from an action under *chapter* 16 in that the parent, or person having physical custody of the child, who proceeds under *chapter* 16 may maintain the action whether or not the child

is or is likely to become a public charge. *Kopack v. Polzer,* 4 *N. J.* 327 (1950). (*Chapter* 16 also allows an action thereunder by a municipal director of welfare, although not by the State Board of Child Welfare, maintainable, however, only upon a showing that the child is or is likely to become a public charge. *N. J. S. A.* 9:16–3.)

Express provision is made in *chapter* 16 that proceedings under it "shall be had by the courts exercising jurisdiction in bastardy proceedings pursuant to chapter seventeen." The courts in which the action may be initiated are specified in *N. J. S. A.* 9:17–1 and include the municipal courts.

But *chapter* 16 says nothing expressly upon the matter of appeals by any party aggrieved by the action of the court of first instance. Even if in fact no legislative right of appeal was provided, this would not, of course, mean that the party aggrieved would be entitled to no appellate review in any court. Under our former judicial system, when the Legislature provided no other form of appeal, review was accomplished by the writ of *certiorari* out of the Supreme Court within the power granted to or inherent in that court to supervise lower tribunals and to review their acts. *Bradner, New Jersey Law Practice* (*Marsh ed.* 1940), *sec,* 529, *p.* 492. Such review would now be sought in the Superior Court by procedure in lieu of prerogative writ under *R. R.* 4:88.

But we are of the view that the Legislature has provided a right of appeal to and *de novo* review by the County Court for any party to a *chapter* 16 proceeding aggrieved by the action of the inferior court. We reach this conclusion as a matter of the construction of *N. J. S. A.* 9:17–20, which reads:

"Any person charged as the reputed father of an illegitimate child or of a child likely to be born illegitimate or the State Board of Child Welfare or any municipality aggrieved by the finding of the court or jury or by the order of the court may appeal to the County Court. Upon request of either party the appeal shall be tried before a jury."

True, the terms of that section mention only an appeal to the County Court in *chapter* 17 proceedings by "any person

charged as the reputed father * * * or the State Board of Child Welfare or any municipality aggrieved," and makes no mention of *chapter* 16 or of an appeal by a parent, or person having physical custody of a child, or the municipal director of welfare, who may be aggrieved by an action of a court in which an action is brought under that chapter. But no tenet of statutory construction is more firmly settled than the rule of interpretation that the court should bring the operation of a statute within the apparent intention of the Legislature, *Sperry & Hutchinson Co. v. Margetts,* 15 *N. J.* 203 (1954), and, as between two possible constructions of it, adopt that interpretation which effectuates rather than defeats the legislative purpose. *State Department of Civil Service v. Clark,* 15 *N. J.* 334 (1954).

This court and the Appellate Division have had no difficulty in finding that in legislative contemplation *chapters* 16 and 17 are to be considered as intertwined enactments, particularly as respects the processing of an action under *chapter* 16 to accomplish its objectives. Thus, in *Borawick v. Barba, supra,* 7 *N. J.,* at *page* 396, this court held that, while *chapter* 16 makes no provision for a determination of paternity, such a determination is a necessary preliminary to an order upon the father for support and is to be reached in the proceeding itself "by a procedure correlated to that of present Chapter 17." In *Hall v. Centolanza,* 28 *N. J. Super.* 391 (1953), the Appellate Division ruled to like effect in holding that the paternity determination may be made in the *chapter* 16 proceeding without that determination being first made in a *chapter* 17 proceeding brought by the State Board of Child Welfare or a municipal director of welfare. Judge Francis, writing for the Appellate Division in that case, cogently observed that, inasmuch as the plaintiff in a *chapter* 17 proceeding must show that the child is or is likely to become a public charge, *chapter* 16, if construed to provide no remedy until after paternity is established in an action under *chapter* 17, would be unavailable to the mother whose child does not require public assistance and the mother seeks only the suitable support for the child

to which *chapter* 16 entitles her. And in *Kopack v. Polzer, supra,* this court rejected as without merit the contention of a reputed father that an order of filiation entered against him in a *chapter* 17 proceeding barred a subsequent proceeding by the mother under *chapter* 16 for adequate support.

To limit the right of *de novo* review in the County Court to parties expressly named in *N. J. S. A.* 9:17–20 and to deny that right to additional parties who may bring or be made parties to the correlated *chapter* 16 proceeding would obviously frustrate the legislative design that the procedures under *chapter* 17 are employable to effectuate the rights of action created by *chapter* 16. We see nothing in the section which requires a construction which would accomplish that defeat of the legislative will. The parties named in the section as permissible appellants are actually the only persons who may be parties in a *chapter* 17 proceeding, and express mention of them was wholly unnecessary. No more or no less would have been expressed had the Legislature omitted such mention and caused the statute to read "Any person * * * aggrieved by the finding of the court or jury or by the order of the court may appeal to the County Court." At all events, nothing in the mention or otherwise in the section requires the conclusion that the right of appeal to the County Court provided thereby was not also to be available to parties to the correlated action under *chapter* 16. Rather, consistent with the evident legislative intent for the processing of such actions as in the case of actions under *chapter* 17 (instinct in the aforementioned provision of *chapter* 16 that action under it "shall be had by the *courts* exercising jurisdiction in bastardy proceedings pursuant to *chapter* seventeen"), we should, as we do, construe the section as giving a right of appeal to the County Court for *de novo* review to any party to a proceeding either under *chapter* 16 or *chapter* 17 who may be aggrieved by an action of the inferior court. Any other construction would create the incongruous result of providing County Court review upon the issue of paternity for the parties in a *chapter* 17 proceeding but not for parties to an action under *chapter*

16 although that vital issue would be determined in an action under the latter chapter according to the mode provided by *chapter* 17.

■ But there must be a reversal and a new trial, upon the second ground urged by the defendant, namely, that prejudicial error resulted from the admission in evidence at the trial in the County Court of a record pertaining to his conviction 11 years earlier for willful refusal and neglect to provide for the support of his then wife and four minor children. The matter of that conviction came up during his cross-examination when plaintiff's counsel asked the defendant whether he had ever been convicted of a crime in the county. He had categorically denied on his direct examination that he had ever had sexual relations with the plaintiff, and the question as to the prior conviction of a crime was asked to elicit evidence bearing upon the credibility of his testimony as to that vital and controlling issue, as may be done under *N. J. S.* 2A:81–12. The issue of paternity turned upon whether the jury believed the plaintiff's testimony that she had indulged in sexual relations with the defendant or believed defendant's denial. (Parenthetically, plaintiff first filed her complaint in the Clifton Municipal Court against another man and filed the complaint against this defendant only after dismissal of her first complaint upon proofs at the hearing thereon that the man named therein was physically incapable of being the father of her child.)

Defendant was fully aware of the subject matter of counsel's inquiry; he admitted that he had appeared before a county judge in the matter of non-support of his minor children but insisted "It was not a crime." He said it was for "nonsupport and neglect * * * of the family * * * children and wife," and that he had agreed "to pay a sum which I have been paying prior to that only not by court order." A recess was taken, following which his attorney stated to the court, "If your Honor please, the defendant is prepared to admit that he was convicted of non-support in 1944 in Passaic County" and that he was "prepared to

admit the conviction, and I think that's all we have to admit—the fact that he was convicted of non-support in that year and in that county." The trial judge was of the opinion, however, that "if plaintiff's counsel desires to prove it, prove the record, he may do so"; and, although defendant's attorney stated, "I will object strenuously," the judge permitted the chief clerk of the Passaic County Clerk's Office to be sworn and to produce the record.

The record consisted of the indictment handed up by the grand jury in September 1944. On its reverse side were a number of notations showing that the defendant had been arraigned on January 16, 1945, pleaded not guilty and was admitted to bail in the amount of $500, was tried on January 26, 1945 and a guilty verdict found, and that he was placed on probation and ordered to pay his wife $30 weekly from November 6, 1945. These are the usual matters forming a record of conviction. But there is other matter on the reverse side of the indictment which is extra the conviction record because it deals solely with post-conviction events concerned with alleged violations of probation. This extra matter is as follows:

"4/5/46    Brought in for Violation of Probation—
           Probation continued.
6/7/46     Brought in for Violation of Probation—Guilty
           of Contempt.  Sentence off 1 week
7/1/46     Sentence off until 7/25/46.
9/20/46    Continued on Probation
12/13/46   Continued on Probation
10/7/49    Hearing held.  Postponed to 10/14/49
           Deft continued on Probation
10/14/49   Hearing postponed to 10/21/49
           Deft. continued on Probation
10/21/49   Hearing held   Postponed to 10/28/49
           Deft. continued on probation
10/28/49   Hearing held   Deft ordered to pay $45. a
           wk. for support of family.
           Probation to pay."

When plaintiff's counsel offered the indictment in evidence he made no suggestion that any matter be deleted but asked "that these be marked in evidence." Defendant's counsel

objected, not on the ground that there was extra matter on the indictment but that nothing whatever in the way of a record was admissible because the defendant had, through counsel, admitted the conviction. Defense counsel's position was not without merit. We have held that the record of a conviction is ordinarily not to be admitted in evidence if the salient facts of record are admitted by the witness during his oral examination. *State v. Costa,* 11 *N. J.* 239, 251 (1953). But, even if defendant would have difficulty in showing prejudice if the record allowed in evidence merely confirmed the facts admitted on his oral examination or by his attorney in his behalf, see *State v. Rodia,* 132 *N. J. L.* 199 (*E. & A.* 1944), the admission of this indictment with the notation of post-conviction events was obviously fraught with prejudice to his rights to a fair and impartial jury determination upon the sharply contested issue of the credibility of his denial that he had indulged in sexual relations with the plaintiff. We note that the trial judge felt constrained in his charge to admonish the jury that they should disregard the comments of plaintiff's attorney during summation that the jury should draw the inference "that because he didn't support the children of his own marriage, that he is refusing to support the child of this relationship." That thought would unquestionably loom larger in the minds of the jury from a consideration of the matter concerning defendant's violations of probation which include, it will be noted, a notation that he was once found guilty of contempt. In these circumstances it is doubtful that the prejudicial effect of such irregular matter could have been eradicated from the minds of the jury even if explicit and direct instructions on the subject had been given by the trial judge. The fact is, however, that the trial judge, while telling the jury that the indictment was to be considered only "as to whether or not you shall believe the evidence of one who has been convicted at a previous time, it has no connection at all with this case except your belief in his testimony and credibility," made no special mention of the extra matter noted on the indictment. And we do not think that defense

counsel's failure particularly to direct the court's attention to the matter should affect the result in this instance. His objection that the record should not be allowed in evidence in any part sufficed under the circumstances.

Reversed, with direction for a new trial.

HEHER, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, JACOBS and BRENNAN—6.

*For affirmance*—None.