54 N.J. Super. 76 (1959)
148 A.2d 184
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STANLEY ARBUS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1958.
Decided February 2, 1959.
*78 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Adolph A. Romei argued the cause for plaintiff-respondent (Messrs. Preziosi & Romei, attorneys).
Mr. Ervan F. Kushner argued the cause for defendant-appellant (Messrs. Kushner & Kleiner, attorneys; Mr. Edwin J. Nylewicz, on the brief).
The opinion of the court was delivered by GAULKIN, J.A.D.
Dawn Honeychurch made a complaint in the Municipal Court of Paterson, under N.J.S.A. 9:16-3, that defendant was the father of her child, born *79 November 19, 1957. Defendant was tried by the magistrate without a jury, and acquitted. Miss Honeychurch then appealed to the Passaic County Court, where the case was tried de novo with a jury under the authority of Leonard v. Werger, 21 N.J. 539 (1956). The jury returned a verdict that defendant was the father. From the resulting judgment of filiation, defendant appeals. He alleges numerous errors but, since the judgment must be reversed and a new trial ordered because of prejudicially improper cross-examination, only those grounds of appeal will be discussed which present problems which may reappear in the new trial.
Appellant argues, on the authority of Tuohy v. Boynton, 5 N.J. Super. 265 (App. Div. 1949), that the proceedings in the County Court were void because the notice of appeal from the municipal court to the Passaic County Court was not signed by Miss Honeychurch or her personal counsel, but by the Paterson City Prosecutor. In the County Court Miss Honeychurch was represented by her personal counsel and by the Paterson City Prosecutor. The record does not show whether she was represented by both before the magistrate. It does seem to us that the notice of appeal should have been signed by Miss Honeychurch, or by her counsel if she had one then, and not by the city prosecutor who, presumably, represented the City of Paterson. But that is a mere irregularity. The appeal was taken for Miss Honeychurch, the real party in interest. Cf. Tuohy v. Boynton, supra.
Appellant correctly points out that the State of New Jersey has, improperly, been named as the plaintiff. The State is not a party to these proceedings. Kopak v. Polzer, 4 N.J. 327 (1950); Tuohy v. Boynton, supra. This happened because, to frame the complaint, it was attempted to alter a form which had been printed for use in bastardy proceedings initiated by the State Board of Child Welfare or the municipal director of welfare under N.J.S.A. 9:17-2. Miss Honeychurch must be substituted as party plaintiff.
*80 Not only did the complaint retain the printed "State of New Jersey" as plaintiff, but that minor mistake led to others much more serious. For example, the County Court judge charged the jury that "The burden is upon the State to establish their case * * * if the evidence in your mind is of equal weight, you must find against the State. If the evidence is in favor of the State, then you must find for the State." This misapprehension of who was plaintiff naturally led to the entry of a judgment of filiation in the form used when the proceedings are instituted by the State Board of Child Welfare or a municipal director of welfare under N.J.S.A. 9:17-2.
The judgment of filiation provided (emphasis ours):
"It is ORDERED and ADJUDGED on this 16th day of April, 1958, that Dawn Honeychurch, a single woman, of the City of Paterson, County of Passaic and State of New Jersey, has been delivered of a child born out of wedlock which is likely to become chargeable to the City of Paterson and that Stanley Arbus is the father of said child.
It is further ORDERED that the said Stanley Arbus pay, or cause to be paid, to James V. Alois, Director of Welfare of the City of Paterson, County of Passaic and State of New Jersey, and his successors in office, the sum of $7.50 weekly for and towards the maintenance of said illegitimate child until the further order of this Court.
It appearing that said mother is in indigent circumstances, it is further ORDERED that the said Stanley Arbus pay or cause to be paid to the Department of Welfare of the City of Paterson the sum of $75.00 for the Paterson General Hospital of Paterson, New Jersey, and $40.00 for Dr. Ciro S. Tarta for the expenses incurred by the said mother during her confinement.
It is further ORDERED that Stanley Arbus, the father of the said child, shall forthwith enter into a bond in the sum of $1,000.00 to the Director of Welfare of the City of Paterson, County of Passaic and State of New Jersey, or his successors in office, that he will obey the Order of Filiation according to the Statute in such cases provided for."
The finding that the child "is or is likely to become a public charge" is required by N.J.S.A. 9:17-2, but has no place in a judgment under N.J.S.A. 9:16-3 when the mother is the plaintiff. In addition there is nothing in the record before us to support such a finding. In fact *81 the printed allegation in the complaint that the child "is, or is likely to become a public charge" was stricken out before it was signed by Miss Honeychurch.
The record does not show upon what basis the County Court decided appellant should pay $7.50 per week for the support of the child, nor does it show that there was presented to the court (after the verdict of the jury) any evidence concerning "the ability and financial condition of the parent" which the court is required by N.J.S.A. 9:16-3 to consider. Nor is there any testimony about the hospital and doctor bills. For example, we do not know whether they were still owing or had been paid; and if paid, when and by whom. Under N.J.S.A. 9:16-3 the court has no authority to order the father to reimburse the department of welfare, or the mother, for hospital and doctor bills paid before the filing of the complaint. By N.J.S.A. 9:16-1 to 3 the County Court is empowered to order payments only for the "support and education" of the child. We do not pass upon whether, prior to the child's birth, the court may order the payment of the doctor and hospital bills for the confinement, as "support" of the child under the statute. That is not before us because here the complaint was filed when the child was more than a month old.
Furthermore, the payments which the court is empowered to order for the benefit of the child must be made to the mother, or to the person having custody of the child. Perhaps they may be made through the probation office, but we know of no authority to order them paid to the director of welfare.
The County Court has no authority, in a proceeding under N.J.S.A. 9:16-3, to exact a bond. A bond is provided for in proceedings under N.J.S.A. 9:17-2, but there are no provisions for one in N.J.S.A. 9:16-1 et seq. It is true that the Supreme Court said in Leonard v. Werger, supra, 21 N.J., at page 543 that "in legislative contemplation chapters 16 and 17 are to be considered as intertwined enactments, particularly as respects the processing *82 of an action under chapter 16 to accomplish its objectives." However, the court there was dealing not with the posting of a bond but with the right to appeal. Our study of those sections of chapter 17 relating to bonds brings us to the conclusion that (even under the broad approach of the Leonard case) it is impossible to extend those sections to compel a bond in a mother's proceeding under chapter 16. See N.J.S.A. 9:17-13 to 16; N.J.S.A. 9:17-30 to 32, 33.
Turning to the question of the improper cross-examination, we find that the defendant had testified on direct examination that he had not been out with Miss Honeychurch after December 1956, when he became engaged to another woman whom he married in 1957; that he had never had sexual relations with Miss Honeychurch at any time; and that he was not the father of her child. There was nothing in his direct testimony (or in the testimony of any other witness called by either side) that was connected with, or a basis for, what was asked in the cross-examination discussed below.
The improper cross-examination was, in part, as follows:
"Q. When did you first find out what sexual intercourse was? I will withdraw the question.
Did you say in the Municipal Court that you had been having sexual intercourse with girls since you were twelve years old?
Mr. Cohn: I object, if your Honor please, and ask for a mistrial on the ground it is prejudicial and highly immaterial.
The Court: The question is if he so testified in the Magistrate's Court. Solely for the purpose of affecting his credibility. It doesn't prove that he did or did not. He is only being asked whether he so testified. He may answer the question.
Mr. Cohn: May I explain this, your Honor please?
The Court: He may answer the question.
By the Court:
Q. Did you so testify? Do you remember the question? A. Yes, I remember the question.
Q. Did you so testify before the Magistrate? A. I might have been exaggerating on the age.
Q. Well, did you or did you not? A. Yes, sir, I did.
By Mr. Azar:
Q. And you say you slept with a lot of girls? A. I never said I have slept with a lot of girls.
*83 Mr. Cohn: Your Honor, I object, and I think Counsel is being completely unfair. There is no record in the Magistrate's Court.
The Court: Mr. Cohn, why is Counsel unfair? He is asking the witness if he so testified. The witness has within his power to admit or deny whether he did or whether he did not. So what is unfair about it?
Mr. Cohn: The issue here today is whether or not 
The Court: Solely for the purpose of affecting his credibility. That is all I am allowing it for.
Mr. Cohn: I would like to explain, your Honor, we have no record of the Magistrate's court.
The Court: You may propound the question. Proceed.
(The last question was read by the reporter.)
A. I never said that."
The printed appendix shows another page or more of similar questions.
Respondent argues that this cross-examination was proper because it was an attack on the credibility of the witness. No effort is made to justify this cross-examination on any other ground.
As the Supreme Court said in State v. Pontery, 19 N.J. 457, 473 (1955), "the cross-examiner has [no] license to roam at will under the guise of impeaching the witness." We venture to say that more sins of admission have been committed during cross-examination in the name of "credibility" than because of any other misconception in the law of evidence. As Wigmore has so well said (3 Wigmore, Evidence (3d ed.), § 878, p. 373), there is abroad
"* * * a notion * * * that cross-examination has some mysterious virtue of its own which imparts merit to facts otherwise worthless. A loose belief doubtless obtains in some minds that almost anything may go in on cross-examination (saving the discretion of the Court). Conceptions of this sort should be radically abandoned. Cross-examination is no universal solvent for reducing everything to admissibility."
These questions cannot be sustained on any ground. If they were intended to develop prior inconsistent statements made in the municipal court, what was inquired about was not contrary to anything testified in the County *84 Court. If the intention was to impeach appellant's veracity, that may not be done with evidence of general depravity, nor with proof of specific acts of misconduct, except convictions for crime. And if the purpose was to show defendant's libido as tending to prove that he was the father of Miss Honeychurch's child, the firmly established policy of our law is not to admit such testimony. "It is objectionable," says Wigmore (3rd ed., § 194, p. 646) "not because it has no appreciable probative value, but because it has too much." Whether we agree with that or not, we do agree with him that the natural and inevitable tendency of such testimony is "to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge." And because it has that effect, when it is admitted it is plainly prejudicial. State v. De Paola, 5 N.J. 1, 9 (1950); Thomas v. Devine, 104 N.J.L. 361, 364 (E. & A. 1928); State v. Snover, 101 N.J.L. 543, 544 (E. & A. 1925); State v. Mount, 73 N.J.L. 582 (E. & A. 1905); Bullock v. State, 65 N.J.L. 557, 574-576 (E. & A. 1900); State v. Salimone, 19 N.J. Super. 600, 608 (App. Div. 1952); State v. Bartell, 15 N.J. Super. 450, 458, 460 (App. Div. 1951), affirmed 10 N.J. 9 (1952); State v. Mussikee, 101 N.J.L. 268 (Sup. Ct. 1925). Cf. Leonard v. Werger, supra; State v. Hatch, 21 N.J. Super. 394 (App. Div. 1952). See also State v. Kociolek, 23 N.J. 400, 417 (1957).
Reversed. Costs to abide the event.