Dally v. Overseers of Woodbridge.

---

## DALLY v. THE OVERSEERS OF WOODBRIDGE.

1. An order of filiation can only be made for the relief of the township in which the bastard was born.
2. On appeal by the putative father, the burthen of proof is on the township, and the place of birth must be proved.
3. On the hearing of such appeal before the sessions, the accused is entitled to prove his previous good character for morality and christian conduct.

On *Certiorari* to the Sessions of Middlesex.

This *Certiorari* brought up an order of filiation by two Justices of Middlesex, affirmed on appeal in the court below made against the plaintiff, for the support of the illegitimate child of Susan Harned, of which she had been delivered on the 18th day of March, 1844.   The evidence before the sessions appeared in a state of the case agreed upon by the counsel of the respective parties, but it is unnecessary to state it, as the grounds of the decision sufficiently appear in the opinion delivered.

On the trial before the sessions it was proved that Mr. Dally was a member of the Methodist church, and a communicant, and his counsel then further offered to prove his general good character for morality and christian conduct.   This evidence was objected to, and overruled by the sessions.

Argued before the CHIEF JUSTICE, and NEVIUS and CARPENTER, JJ.

*J. Van Dyke*, for plaintiff, moved to set aside the orders below, first, because it did not appear where the birth took place, and secondly, because evidence of good character offered by the accused had been overruled.

*Leupp*, for the township of Woodbridge, contra.

The opinion of the court was delivered by

CARPENTER, J.   We are of opinion upon both grounds taken, that the orders below cannot be supported.

1. It does not appear in proof in any part of the case where the birth took place, and of consequence there is no evidence that the child was born in the township of Woodbridge, which is necessary to support the proceeding.   It appears, by the testimony of the mother, that she was delivered at the house of her step-father, James Tanner, but it does not appear in evidence, so far as I can discover, where the house of the father is situate. It does not even appear that it is situate within the county of Middlesex.   The authority of the justices to make the order of

filiation rests solely on the provisions of the statute. The statute provides that any two justices of the peace of the county, *within which* any bastard shall be born, upon examination, &c., may take order for the better relief of every township *in which* such bastard shall be born, &c. *Rev. Stat.* 902, § 1; *Rev. L.* 171, § 1. The words of the statute are clear and explicit. Not only is the jurisdiction to make such order confined to the justices of the county; but further, it can only be made for the relief of the township in which such child may have been born; and it has been so held both under this act and the statute of 13 *Eliz. c.* 3, from which it has been copied. *R.* v. *Wilson*, 2 *Adol. & Ell.* 230; *Quick* v. *Amwell, Pen.* 1016; *The State* v. *Bidleman*, 2 *Har.* 20; *The State* v. *Hawkins*, in the Court of Errors, Oct. Term, 1846. (*a*)

It is not sufficient that the original order by the two justices recites that the birth took place in the township of Woodbridge. It has been held that on an appeal from an order of filiation, the burthen of proof rests on the respondents, and of consequence the place of birth must then be proved. *The State* v. *Bidleman*, 2 *Har.* 20; *R.* v. *Knill*, 12 *East.* 50; *R.* v. *The Inhabitants of Newbury*, 4 *T. R.* 475. It is true it was held otherwise in a case cited for the township, (*Sweet* v. *Overseers of Clinton*, 3 *John.* 23,) but it is a case which stands unsupported. The decision in that case was evidently made under a misapprehension, the attention of the court not having been directed to the authorities which then existed on this question.

2. On the trial before the sessions, the counsel of Dally offered to prove his previous good character for morality and christian conduct, which evidence was overruled. It was offered in order to afford a presumption that the plaintiff had not been guilty of the criminal act charged against him.

In criminal prosecutions, where the charge involves moral turpitude, and the character of the defendant is thus put in jeopardy, such evidence is now clearly admissible, but in regard to civil proceedings, the rule is not so clear. It is said that evidence of general character is not admissible in civil actions,

_____
(*a.*) v. post.

unless it be in issue by the very nature of the action. In *Attorney General* v. *Bowman*, 2 *B. & P.* 352 *note*, which was an information to recover a penalty for keeping false weights, such evidence was refused. It was said, that to admit such evidence would be contrary to the true line of distinction which was said to be, that in a direct prosecution for a crime, such evidence was admissible; but when the prosecution is not directly for the crime, but the penalty, as in that information, then it is not admissible. The evidence of good character being only on the ground, that it affords a presumption that the act has not been committed, it has been suggested in an acute criticism on the case just cited, that the principle of this distinction is not very intelligible. That the effect of the distinction makes the admissibility of evidence to prove a fact, depend, not on its tendency to prove it, but upon the consequences which would result from the fact when proved. 2 *Stark. Ev.* (*Ed.* 1842,) *p.* 304. But, however defective the distinction may seem to be in point of principle, it has been fully sustained by the decisions of the courts; in practice it seems to be safe and convenient, and it is not here intended to throw any doubt over the rule. See *Fowler* v. *The Ætna Co.*, 6 *Cow.* 673; *Humphry* v. *Humphry*, 7 *Conn.* 116; 1 *Greenl. Ev.* §§ 54, 55.

The weight of authority is to exclude in civil suits, with perhaps some exceptions, evidence of general character, unless it be in issue by the very nature of the transaction; an exception said to be technical, and confined to certain cases in which character is of particular importance. But this is not strictly a civil action, and it seems unnecessary to investigate the precise limits of the rule. It is true that it has been held to be in the nature of a civil action, for the purpose of bringing it by a liberal construction within the statute, which authorizes the issuing of a commission by the sessions, to take the examination of a foreign witness. The expression in the statute was said by the court, in the case cited, to have been used in contradistinction to the criminal jurisdiction, and to prevent a conclusion, which might have been inferred from a general grant of power, that the depositions of witnesses might be taken and used on the trial of indictments. *Hildreth* v. *Overseers of Hopewell*, 1 *Gr.*

6. It is a mere statutory proceeding, to compel in a summary way, the putative father, to provide for the maintenance of his illegitimate offspring, and thus to protect the township from harm.

Though not for the punishment of crime, and therefore of a civil nature, yet it charges crime. It puts character in jeopardy, not incidentally, but by the very nature of the proceeding. Evidence of character seems admissible, without any infringement of the general rule, and it has heretofore been so held in this state. In the case of *The State* v. *Hawkins*, already referred to, the judgment of the Supreme Court, affirming the order of the sessions on appeal was reversed, and one of the grounds on which that reversal proceeded, was the rejection by the sessions, of evidence of good character, offered by the accused. It is important, in this proceeding, for the protection of the innocent against false accusations, that it should be so. It is a charge easily made, and hard to be defended by the party accused, though never so innocent.

For both reasons, the orders made by the justices and by the sessions on the appeal, must be quashed.

The CHIEF JUSTICE and NEVIUS, J. concurred; the latter with hesitation, upon the second point.

*Both orders quashed.*