OVERSEER OF THE POOR OF THE TOWN OF MONTCLAIR, ET AL., RESPONDENTS, v. CHARLES W. EASON, APPELLANT.

Submitted March 25, 1918—Decided June 17, 1918.

1. In a proceeding before a statutory tribunal, as in bastardy cases, when there is a trial *de novo* on appeal with jury before the Court of Common Pleas or Quarter Sessions, and a verdict requiring the entry of an independent judgment by that court, its failure to enter such judgment will not work a reversal on *certiorari,* but the record will be remitted to it for the entry of such judgment as was required by law in accordance with the verdict.

2. In a bastardy case under our statute, it is not necessary to a finding against the putative father, that the testimony of the mother of the bastard should be corroborated.

3. A bastardy case under our statute is not a criminal but a civil proceeding; the burden of proof does not require proof of paternity beyond a reasonable doubt; and while the incidental element of criminality involved in the paternity of an illegitimate child entitles the putative father to present evidence of good character, which the jury should consider in connection with the other evidence in the case, the defendant is not entitled to be absolved if the character evidence, either alone or in connection with the other evidence, raises no more than a reasonable doubt that he is the father of the bastard child.

On appeal from the Supreme Court.

For the appellant, *William R. Wilson.*

For the respondent, *Hartshorne, Insley & Leake.*

The opinion of the court was delivered by

PARKER, J.  This is a bastardy case.  An order of filiation having been made by the recorder of Montclair, after the usual hearing and before birth of the child, there was an appeal to the Essex Quarter Sessions and a retrial with a jury. The child had then been born and was exhibited to the jury; and upon their finding that appellant was the father, the Sessions gave judgment accordingly and made an order pro-

viding, *inter alia,* that appellant enter into bond conditioned to obey the order of filiation made by the recorder. There was no new order of filiation in the Sessions, and the proceedings having been removed therefrom to the Supreme Court by *certiorari,* that court affirmed the judgment that appellant was the father, but held that it was the duty of the Sessions to make its own order of filiation, and ordered the record remitted for that purpose. This action of the Supreme Court, and matters occurring at the trial in the Sessions, are assigned for error.

Taking up first the remission of the record by the Supreme Court, we think its action was clearly right. That a new order of filiation should be made in the Sessions is settled. *Hurff* v. *Overseer, &c.,* 38 *N. J. L.* 287, and cases cited. In that case it was held that the matter must go back to the Sessions for a retrial, but this was because there had been no jury in that court, and there was consequently no record of the facts found on which to base an order (on *p.* 289). At the same time the practice established in the earlier case of *Doremus* v. *Howard,* 23 *Id.* 390, of remitting a record which exhibited the verdict of a jury, for entry of a judgment in accordance therewith, was recognized in the Hurff case, and followed in the later decision of *Mulcahy* v. *Traction Co.,* 57 *Id.* 345. The rule may therefore be considered as settled that when there is a trial *de novo* on appeal with jury in the Court of Common Pleas or Quarter Sessions and a verdict requiring the entry of an independent judgment by that court, its failure to enter such judgment will not work a reversal on *certiorari,* but the record will be remitted to it for the entry of such judgment as was required by law in accordance with the verdict.

We proceed therefore to consider the alleged errors at the trial before the Quarter Sessions, as set forth in the appellant's brief (there was no oral argument). The first point made is that there was no corroboration of the testimony of the complaining witness, the mother of the bastard. There is some contrariety in the decisions of the various states on this point, due no doubt to variance in the respective statutes. The rule

as stated in 7 *C. J.* 988, is that "in the absence of a statute requiring corroboration, the jury may find the defendant is the father of the child on the sole testimony of the mother, provided they believe it to be credible." This seems to be the rule in Massachusetts (*Noonan* v. *Brogan, 3 Allen* 481) and Indiana (*Evans* v. *State,* 165 *Ind.* 369; 75 *N. E. Rep.* 651; 74 *Id.* 244.) The English statute was strict in requiring corroboration of the mother in some material particular: *Reg.* v. *Read, 9 A. & E.* 619; and consequently decisions thereunder are hardly relevant. Our own act contains no such requirement. *Comp. Stat., p.* 185, §§ 5, 6; *Id., p.* 187, § 14. The trial on appeal is conducted in the same manner as that before the magistrate, who, if no jury be demanded, shall "examine the mother of such bastard or the woman so pregnant as aforesaid, on oath, in the presence of the person so charged, touching the father of such child, and shall hear any proofs that may be offered in relation thereto." (Section 5.) In jury cases the magistrate is to impanel and swear the jury, "and swear the witnesses produced to establish and rebut such accusation, and the said accusation shall thereupon be tried as in cases in courts of common law before such jury." (Section 6.) There is no intimation in our statute or decisions pointed out by counsel or discovered by our examination, that the testimony of the mother, who is not merely a competent but a required witness, must not be evidential unless corroborated. We think the rule is otherwise.

But if the position taken by counsel were correct, it would not avail the appellant; for apart from the fact that the point was not raised at the trial in any way, corroboration was supplied in the production of the child before the jury in the presence of appellant with opportunity of inspection and a determination of resemblance. This was a proper means of proof. *Gaunt* v. *State,* 50 *N. J. L.* 490.

The next division of the brief, headed "Burden of Proof," points to no judicial action.

The third, fourth and fifth points may be considered together. They amount to this: That no finding against appellant could be had unless he was shown to be the father

beyond a reasonable doubt, and that the court refused to recognize this rule and charged counter to it; and that appellant was entitled to the benefit of any reasonable doubt engendered by evidence of good character given in his behalf. Four requests to charge were submitted and refused. The first is not now pressed; the last was covered in the charge. The other two are as follows:

"2. That evidence of good character is not a mere makeweight thrown in to assist in the production of a result that would happen at all events, but is positive evidence and may of itself by the creation of a reasonable doubt, produce an acquittal.

"3. That evidence of good character may of itself produce a reasonable doubt where otherwise no reasonable doubt would exist."

These requests are manifestly based on the theory that unless appellant was shown beyond reasonable doubt to be the father of the bastard, no verdict of paternity should go against him. As has been stated, the court declined to recognize such a rule and told the jury that they could find such a verdict if the town had sustained the burden of proving by a fair preponderance of the testimony that appellant was the father of the child.

This instruction was correct. It may be conceded that bastardy proceedings are sometimes characterized as criminal or *quasi*-criminal in character; but usually they are held to be in the nature of civil proceedings. The views in the various state jurisdictions, with authorities, will be found collected in 7 *C. J.* 966. In this state it seems to be settled that they are civil or at least *quasi*-civil. In *Hildreth* v. *Overseers,* 13 *N. J. L.* (1 *Green*) 5, it was said by Chief Justice Ewing, that "an order of affiliation and maintenance is not for the punishment or prevention of crime, or for the reformation of morals, but to compel the father to pay for the maintenance of his illegitimate offspring, and thus to protect the township from any charge for its support. The proceeding is therefore strictly of a civil nature." The question under consideration was whether a commission to take testimony *de bene esse*

could be issued in such a case, it being conceded that it could not, if the action were a criminal one. In the later case of *Dally* v. *Overseers,* 21 *Id.* 491, 494, the same court said it was in the nature of a civil action, but as it incidentally charged a criminal offence, the defendant was entitled to put in evidence of good moral character. Still later, in *Leconey* v. *Overseer,* 43 *Id.* 406, Mr. Justice (afterwards Chief Justice and Chancellor) Magie, said: "The proceeding under the bastardy act, while of statutory character, intended to compel, in a summary way, the putative father to protect the public against the maintenance of his illegitimate children, is not a criminal, but a civil action," citing the foregoing cases. In *Schomp* v. *Tompkins,* 46 *Id.* 608, Chief Justice Beasley speaking for this court, it was held that every intendment should be made in favor of the orders in bastardy proceedings; and that the judgment was to be treated as a common law judgment, to which the axiom, *"omnia præsumuntur esse rite acta"* is applicable.

The summary features of the procedure have been greatly mitigated by the legislature, as will be seen from a comparison of the older and later acts. *Elm. Dig., p.* 39; *Pamph. L.* 1847, *p.* 903; *Pamph. L.* 1858, *p.* 467; *Nix. Dig.* (1868), *pp.* 70-73; *Rev.* 1877, *p.* 70 *et seq.* In the present statute (section 6) it is provided that the jury is to be summoned as in a small cause court, which is a court of civil jurisdiction exclusively; that the same right of challenge to jurors shall exist as in civil cases at law; and in section 14 the act says that on appeal to the Sessions the "burden of proof" shall be "upon the township as it was before the magistrate." These provisions are plainly consonant with the theory of a civil proceeding and that alone. If so, the doctrine of reasonable doubt does not apply and the requests predicated thereon were properly refused.

The character evidence proffered by appellant was duly admitted and the jury were properly charged to consider it with the other evidence in the case. Appellant was not entitled to more than that.

We find no error either in the Supreme Court or in the trial before the Sessions, and the judgment brought up will accordingly be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   11.

*For reversal*—None.