Hudson County Court of Quarter Sessions.

IN THE MATTER OF THE ORDER OF FILIATION AGAINST
HAMILTON GORDON EL.

Decided July 29, 1948.

For the appellant, *Harry Krieger.*

For the City of Jersey City, *Charles A. Rooney (Paul C. Supinski,* of counsel).

DREWEN, C. P. J. This appeal is from an order of filiation made upon the verdict of a jury in the First Criminal Court, of Jersey City. *R. S.* 9:17–20; *N. J. S. A.* 9:17–20.

The case was tried January 9th, 1948, the birth of the child having occurred October 16th, 1947. Appellant was born December 5th, 1930, so that he is still within the age limit of eighteen years as defined in the Juvenile and Domestic Relations Court Act, *R. S.* 9:18–12 as amended; *N. J. S. A.* 9:18–12.

If the illicit begetting of child in circumstances rendering one amenable to our bastardy law is an act of delinquency within the provisions of the cited statute, it follows that the Juvenile and Domestic Relations Court has jurisdiction in all consequent proceedings. This contingent proposition the City of Jersey City concedes, but it denies that the facts here do present a delinquency within the intent and meaning of the act, and it claims further that assuming they do, jurisdiction of the Juvenile Court is not exclusive but concurrent with that of the criminal courts of the city. There are thus two questions to be decided. Is the alleged misconduct of this defendant a delinquency in the indicated sense? If so, is the jurisdiction of the Juvenile Court in the premises exclusive or concurrent? Upon the trial below the jurisdiction of the court was challenged from the outset.

Juvenile delinquency is declared by the statute in question to be "any act which when committed by a person of the age of eighteen years or over would constitute \* \* \* any act or offense for which he could be prosecuted in the method of [sic] partaking of the nature of a criminal act or proceeding." *R. S.* 9:18–12 as amended.

At the outset and in passing it might be observed that for the offense of fornication, ingredient in the episode alleged,

this appellant certainly "could be prosecuted in the method" described; and further that the fixing and enforcing of obligations incident to the illegitimate birth are within the authority of the Juvenile Court. It would seem that this alone should decide the first question; but we need not rest here.

The briefs submitted are in large part given to a discussion of the correct and proper designation of proceedings of this kind, whether they are civil or criminal, or *quasi* in the one class or the other. But the denomination applied by our appellate courts in decisions on the point appears uniformly to depend upon the nature of the question presented; that is, the proceedings are to be thought of as *quasi*-criminal for some purposes and as *quasi*-civil for others. The Court of Errors and Appeals in *Montclair* v. *Eason,* 92 *N. J. L.* 199; 104 *Atl. Rep.* 291 (Mr. Justice Parker), said: "It may be conceded that bastardy proceedings are sometimes characterized as criminal or *quasi*-criminal in character, but usually they are held to be in the nature of civil proceedings. * * * In this state it seems to be settled that they are civil or at least *quasi*-civil. (*Montclair* v. *Eason,* 92 *N. J. L.* 199; 104 *Atl. Rep.* 291.)" To show complete absence of category we need nothing more than the quoted statement. In the city's brief the proceedings are spoken of as "essentially civil." In *Thatcher* v. *Hackett,* 16 *N. J. Mis. R.* 459; 1 *Atl. Rep.* (2d) 438, the court considers the element of conflict between the legislative grant of appellate jurisdiction to the Quarter Sessions, a criminal court, and the pronouncement in *Montclair* v. *Eason, supra.* In *Dally* v. *Overseers of Woodbridge,* 21 *N. J. L.* 491, the question was whether character evidence, admissible ordinarily only in a criminal case, was proper under a charge of bastardy. Such evidence had been excluded at the trial on the ground that it is allowable only in a criminal case. The Supreme Court reversed and declared the case to be "not strictly civil" so as to exclude character testimony. See, also, *Hawkins* v. *State,* 21 *Id.* 630. So, there is nothing to be gained by attempts at classification.

Here we have a law of fundamental social and moral purpose, drastic in its remedial design. The problem and the test of the law's application, manifested in the clear concern

of particular sections and throughout, is the protection of pliant youth against demoralizing reproach as a consequence of infraction. Its major care is for the quality of the judicial and corrective environment in which youth is to be placed when its delinquency necessitates the public processes of inquiry and discipline. And in order that there be neither hurt nor hardening, all avoidable external shame of the culprit is to be obviated by the means and in the manner which the statute devises. The only exception to this broad policy thus far pronounced by our law is in the extreme instance of a capital case. *State* v. *Smigelski*, 137 *N. J. L.* 149; 58 *Atl. Rep.* (*2d*) 780; *In re Mei*, 122 *N. J. Eq.* 125; 192 *Atl. Rep.* 80; *In re Daniecki*, 119 *N. J. Eq.* 359; 183 *Atl. Rep.* 298.

The act shall be liberally construed for the accomplishment of its purpose. *R. S.* 9:18–1; *N. J. S. A.* 9:18–1. It expressly makes children, that is juveniles within its jurisdiction, the wards of the state (*R. S.* 9:18–3; *N. J. S. A.* 9:18–3); and provides further that "children who appear before the court in any capacity shall be deemed to be wards of the court and protected accordingly." *R. S.* 9:18–20; *N. J. S. A.* 9:18–20. The ascertainment at any stage that one concerned as culprit in any criminal or *quasi*-criminal matter is a juvenile shall require the immediate transfer of the case to the Juvenile and Domestic Relations Court (*R. S.* 9:18–16; *N. J. S. A.* 9:18–16). Cases involving juveniles shall be heard separate and apart from those involving adults and without the assistance of counsel. Trials shall be without jury and the accused shall at all times be segregated and protected against contact with adult offenders (*R. S.* 9:18–25; *N. J. S. A.* 9:18–25). Transportation from place to place shall be by means other than the usual and ordinary police equipment employed in the transportation of adults. *R. S.* 9:18–25; *N. J. S. A.* 9:18–25.

So much for spirit and purpose. Now what are some of the things by which a bastardy proceeding may be said "to partake of a criminal action?" They are readily multiplied. To begin with, the bastardy law provides for suit in the criminal court of the city or other municipality and for appeals

to the Quarter Sessions by trial *de novo,* with a jury. *R. S.* 9:17–1, 20; *N. J. S. A.* 9:17–1, 20. Its initial process is a warrant of arrest executed by a police officer. *R. S.* 9:17–4; *N. J. S. A.* 9:17–4. For the release of the accused pending trial bail is required. *R. S.* 9:17–6; *N. J. S. A.* 9:17–6. In default of surety, commitment may be to the common jail of the county (*R. S.* 9:17–10; *N. J. S. A.* 9:17–10); and there are the like provisions in the event of conviction and default of performance bond for the commitment of the accused. Nothing more than this sequence of penal features in a bastardy case should be required to show a "method partaking of the nature of a criminal action or proceeding." The city responds to this by urging that the procedural steps recited are not more peculiar to bastardy proceedings than they are to purely civil issues whose non-relation to the Juvenile Court Law cannot be questioned and whereunder the same procedural incidents are to be found, such as initial arrest and holding to bail and ultimate commitment. But this contention is not in point. The only relevant inquiry here is whether there are features in the case before us that bring it within the statutory meaning and intent and not whether the same features are to be found in other cases clearly beyond the purview of the problem.

There is a further compelling consideration. The statute gives heed not only to misdeeds of a criminal nature but also in the most general terms to the very earliest signs of the wayward trend. Idle roaming of the streets at night, truancy, growing up in idleness, incorrigibility and any deportment endangering the morals, health or general welfare of a juvenile (*R. S.* 9:18–12; *N. J. S. A.* 9:18–12). In discerning the bad potency of the misbehavior described and remembering that the juvenile period extends to the age of eighteen years, who can with good sense doubt that illicit juvenile paternity must be included in the apprehended consequences? Certainly it must be included in "deportment endangering the morals * * * or general welfare of a juvenile." And where illicit juvenile paternity has ensued, as it is claimed to have ensued here, we are surely not free to suppose that this corrective social law, because it has so far failed of its pre-

ventive purpose in a given case, should be thereupon intended to apply no further. While the offender remains a juvenile he continues within the purpose and design of the Juvenile Law, not only for correction of delinquency already committed, but for his protection against still further decline. The statute marks no stage and takes no occasion for the abandoning of erring youth to its error.

Reverting to the element of fornication, it is to be observed that were there to be the distinction for which the city contends between that offense and a charge of bastardy, it could only be on the ground of the aggravated personal and social harm involved in the latter instance; but it is this very ground that would in reason and conscience operate not to remove the case from the Juvenile Court but more definitely to keep it there.

By way of argument the city asks a question. Should it be determined that the Juvenile Court jurisdiction is exclusive, "what would become of the right of appeal on trial *de novo* which would lie naturally in courts outside of Juvenile Courts?" The answer is that juvenile defendants in bastardy cases are entitled to the same right of review as juvenile defendants in all other cases.

It is the judgment of this court that the charge now dealt with involves delinquency that clearly brings the case within the jurisdiction of the Juvenile Court.

For its claim that the jurisdiction of the Juvenile Court is concurrent only the city relies on *R. S.* 9:18–14; *N. J. S. A.* 9:18–14. This statute gives the Juvenile Court concurrent jurisdiction with other courts in bastardy cases, without restriction as to age, but it concedes nothing of the peculiar and exclusive jurisdiction of the Juvenile Court over juvenile delinquents.

The exclusive jurisdiction given by *R. S.* 9:18–12; *N. J. S. A.* 9:18–12, applies in the present case.

For the reasons stated the action of the First Criminal Court of Jersey City in making the order of filiation appealed from is reversed.

There is also raised the question of *res judicata*. It appears from statements in appellant's brief that prior to the trial in

the Criminal Court of the city the same issue was heard by the Juvenile Court, upon sworn complaint and resulting in dismissal. The point is argued for appellant at some length and authorities cited. To this the city makes no other response than the mere assertion that in the case previously heard the parties and the issues were different. Needless to say, the question of *res judicata* cannot be decided without determining whether or not there was sufficient identity of parties and issues in the two trials. However improbable we may regard the existence of valid ground for the city's denial of such identity, the fact remains that there is before us no record of the Juvenile Court proceedings by which the basic determination can be made. The court simply cannot be put in the position of deciding the question as if it were no more than a controversy between counsel over the facts.