80 N.J. Super. 91 (1963)
193 A.2d 143
THE STATE OF NEW JERSEY, EX REL., HELOYSE ACORMAN, PLAINTIFF-RESPONDENT,
v.
ALPHONSE PITNER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 6, 1963.
Decided July 12, 1963.
*92 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Ira Rabkin argued the cause for appellant.
Mr. Abraham Greenberg argued the cause for respondent.
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiff instituted an action in the Municipal Court of the City of Camden under N.J.S.A. 9:16-3, by which she sought a determination that defendant is the father of her illegitimate child, and an order that defendant provide support for the child pursuant to R.S. 9:16-2. The Municipal Court so held and ordered accordingly. On appeal to the Camden County Court, that court reached the same result. Thereafter the County Court denied defendant's motion for a new trial. Hence, this appeal.
The background of the proceeding follows: In 1955, upon plaintiff's complaint, a grand jury of Philadelphia County, Pennsylvania, returned an indictment charging that the defendant "did commit fornication with Heloyse Ellman *93 [plaintiff] and a certain female bastard child of the body of the said Heloyse Ellman did then and there beget." The indictment was founded on Pa. Stat. Ann. tit. 18, § 4506 (1945). The section specifically makes the offense a misdemeanor, and provides for a fine of $100, as well as for support of the child, and hospital or funeral expenses. The civil aspects of Title 18  the award of support and the expenses  are implemented by Pa. Stat. Ann. tit. 12, § 1003 (1953), which permits the entry of judgment for same in the court of common pleas.
The case was heard in the Municipal Court in Philadelphia, Women's Criminal Division. Under applicable Pennsylvania law the parties entered into an agreement whereby plaintiff was to receive $1,000, and a verdict of not guilty was to be entered for the defendant. See Commonwealth v. Weaver, 9 Pa. Dist. 427 (1899). The court and the district attorney approved the settlement and a judgment of not guilty was entered.
In 1958 plaintiff sought a rehearing in the Pennsylvania court claiming that she never received the $1,000. The court dismissed her petition.
Thereafter, plaintiff established a domicile in New Jersey and instituted the present proceeding. Defendant denied paternity and also interposed the defense that the Pennsylvania judgment of "not guilty" was "res judicata" of the issue of paternity, and was binding on the courts of this State under Art. IV, § 1 of the Constitution of the United States, which provides:
"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."
The Municipal Court found paternity as a fact and held that the Pennsylvania statute was penal in nature; therefore, it had no extraterritorial effect and could not be pleaded *94 as a bar to the New Jersey action which is deemed to be a civil action. See Overseer of Poor of Town of Montclair v. Eason, 92 N.J.L. 199, 203, 1 A.L.R. 631 (E. & A. 1918). The County Court likewise found paternity. It did not pass upon the character of the charge  i.e., whether civil or criminal, but held that the settlement in Pennsylvania and the recordation of "not guilty" in the judgment did not reflect a trial on the merits; hence, that the Pennsylvania judgment was not a bar to the New Jersey proceeding.
The sole question presented to us is whether in the circumstances outlined, the "not guilty" disposition arrived at by negotiation is dispositive of the paternity issue, and binding upon the courts of this State.
Reconciliation of the criminal  civil dichotomy which generally appears in bastardy statutes has long been a source of judicial difficulty in the construction of legislation in this field. In In re El, 26 N.J. Misc. 285, 287, 60 A.2d 893 (City. Ct. 1948), Judge Drewen aptly analyzed the situation thus:
"The briefs submitted are in large part given to a discussion of the correct and proper designation of proceedings of this kind, whether they are civil or criminal, or quasi in the one class or the other. But the denomination applied by our appellate courts in decisions on the point appears uniformly to depend upon the nature of the question presented; that is, the proceedings are to be thought of as quasi-criminal for some purposes and as quasi-civil for others. The Court of Errors and Appeals in Montclair v. Eason, 92 N.J.L. 199 * * * said: `It may be conceded that bastardy proceedings are sometimes characterized as criminal or quasi-criminal in character, but usually they are held to be in the nature of civil proceedings. * * * In this state it seems to be settled that they are civil or at least quasi-civil. * * *' To show complete absence of category we need nothing more than the quoted statement. In the city's brief the proceedings are spoken of as `essentially civil.' In Thatcher v. Hackett, 16 N.J. Misc. R. 459; 1 Atl. Rep. (2d) 438, the court considers the element of conflict between the legislative grant of appellate jurisdiction to the Quarter Sessions, a criminal court, and the pronouncement in Montclair v. Eason, supra. In Dally v. Overseers of Woodbridge, 21 N.J.L. 491, the question was whether character evidence, admissible ordinarily only in a criminal case, was proper under a charge of bastardy. Such evidence had been excluded *95 at the trial on the ground that it is allowable only in a criminal case. The Supreme Court reversed and declared the case to be `not strictly civil' so as to exclude character testimony. See, also, Hawkins v. State, 21 Id. 630. So, there is nothing to be gained by attempts at classification."
It is entirely clear that the judgment of "not guilty" entered in the Pennsylvania action resulted from a settlement entered into by the mother and putative father of the child. Whatever the effect of the judgment might be as to any claim plaintiff might have against the defendant, in our view it should not operate to deprive the child of its right to seek support, absent a judicial determination on the merits, that the defendant is not the child's father. Parents are not ordinarily permitted to contract away the legal rights their children may have against third persons. Thus it is that settlements of such claims to be binding on the infant require a judicial determination that the proposed settlement is in the best interests of the child. We perceive neither logic nor justice in the idea that parents inter sese may enter any agreement which deprives the child of an absolute personal right granted to him by the law. Compare Kopak v. Polzer, 4 N.J. 327, 332-333 (1950). The design of our bastardy statute is primarily to compel the parents of an illegitimate child to provide the child with the care, education and maintenance which any other child would have as a matter of right; and secondarily, to protect the public from the financial burden of providing what is owed to the child by its parents. See Kopak v. Polzer, supra, 4 N.J., at p. 333.
The basic purpose of protecting the child should not be subverted by legalistic categorization of statutory enactment unless no reasonable construction of the laws of the respective states, and the results of judicial proceedings provided therein, would permit the child to establish paternity  the necessary foundation for the enforcement of its rights against its father.
*96 Whether the Pennsylvania statute be placed in the quasi-civil category or in a quasi-criminal classification,[1] we are satisfied that the pro forma judgment of non-paternity entered in the Pennsylvania court, purely in consequence of the settlement between the mother and the putative father, and without regard to the continuing needs of the child, is not binding on the child since it patently does not represent an adjudication of the child's rights on the merits of the charge of paternity.
Accordingly, the judgment is affirmed.
NOTES
[1] We find it unnecessary to decide this question. However, if such determination were requisite to our decision we would hold that the Pennsylvania statute is essentially of criminal import and hence would not be binding upon the courts of this State. The penal attributes of the Pennsylvania statute have frequently been noted in the decisions of that state. A bill of indictment must be presented to the grand jury unless waived by the defendant. See Commonwealth v. Stevenson, 198 Pa. Super. 55, 181 A.2d 910 (Super. Ct. 1962). A defendant's guilt must be established beyond a reasonable doubt. Commonwealth v. Becker, 168 Pa. Super. 69, 76 A.2d 657 (Super. Ct. 1950); Commanwealth v. Young, 163 Pa. Super. 279, 60 A.2d 831 (Super. Ct. 1948); Commanwealth v. DiMatteo, 124 Pa. Super. 277, 188 A. 425 (Super. Ct. 1936). In Commonwealth v. Shimpeno, 160 Pa. Super. 104, 50 A.2d 39 (Super. Ct. 1946), the court said the Soldiers and Sailors Act only applied to civil actions and hence would not toll the statute of limitations in a prosecution for failure to support a bastard child because that offense is criminal in nature. See also Commonwealth ex rel. Houser v. Seip. 385 Pa. 545, 124 A.2d 110 (Sup. Ct. 1956).