G., PLAINTIFF, v. C., DEFENDANT.

**Superior Court of New Jersey**
Law Division

Decided September 12, 1978.

*Abraham J. Chasnoff* (Union County Welfare Board) for plaintiff.

*William Butler* for defendant (*Hooley, Perseley, Butler & Kelly*, attorneys).

CALLAHAN, J. D. C. (temporarily assigned).

On July 23, 1975 plaintiff filed an action in the Union County Juvenile and Domestic Relations Court seeking to establish that defendant is the father of her out-of-wedlock child and compelling him to provide support. Plaintiff receives assistance from the Union County Welfare Board. On March 7, 1978 the Domestic Relations judge signed an order dismissing her complaint. It provided: "Having reviewed the testimony the Court finds that the complainant has failed to prove her case by a preponderance of the evidence as required." Plaintiff filed a timely notice of appeal. The notice included a demand for trial by jury. Defendant, however, contends that plaintiff has no such right to a jury trial.

Plaintiff relies upon *N.J.S.A.* 9:17 20, which provides in relevant part:

> . . . the county welfare board or any municipality aggrieved by the finding or order of the court may appeal to the County Court. Upon request of either party the appeal shall be tried before a jury.

Defendant, however, offers *R.* 4:74 6, which states that the appeal "shall be heard by the county court [now Law Division of the Superior Court in the county of venue] without a jury unless *defendant* demands trial by jury in his notice of appeal." (Emphasis supplied). Defendant contends that the decision to demand a jury trial is therefore his alone.

We must now consider two questions: (1) whether the apparent conflict between rule of court and statute is irreconcilable, and if so, (2) whether a court rule which limits the statutory entitlement to a jury trial offends the constitutional guarantee against impairment of that right.

## I

The rule and statute plainly contradict each other. The Appellate Division has commented, "We note but have no occasion to resolve the apparent conflict between *N.J.S.A.* 9:17 20 and *R.* 4:74-6." *Sarte v. Pidoto*, 129 *N.J.Super.* 405, 409 (1974). However, the rule may have been intended to implement the statutory guarantee to a jury trial rather than to restrict it. The tentative draft comment states:

> This rule makes minor changes in the source rule, adding the *statutory right of appellant* to demand trial by jury, *cf. N.J.S.A.* 9:17 20, and making clear the obligation of the lower court to transmit the notice of appeal and its record to the appellate court. [Emphasis supplied]

Had the Supreme Court intended to directly contradict the statutory grant of a jury trial to either party, which "was conceived by the Legislature to be an important attribute," *Sarte, supra,* 129 *N.J.Super.* at 408, it presumably would not have referred to it as a "minor language change." It seems more reasonable to assume that the language used in *R.* 4:74 6 was intended to "add" whatever "statutory right" exists under *N.J.S.A.* 9:17 20 to demand a jury trial.

This interpretation of the drafters' intent is supported by a comparison of the terms used in the rule itself and in the tentative draft comment. The rule refers to the "defendant's" right, while the comment uses the term "appellant." Clearly, the drafters considered the two terms to be interchangeable. That assumption is not correct in the context of bastardy proceedings, however, as defendant is *not* the only party able to appeal an adverse determination. *N.J.S.A.* 9:17 20 permits "any person charged as the reputed father . . . or the

State Board of Child Welfare or the county welfare board or any municipality aggrieved . . ." to appeal an adverse determination. Therefore, the drafters of the rule appear incorrect in assuming that a rule permitting only the defendant to demand a trial by jury would suffice to "add" the "appellant's statutory right."

■ The explanation for the drafters' use of the terms "defendant" and "appellant" as synonyms might lie in the anomalous nature of a bastardy proceeding. In appeals of criminal proceedings it would be entirely reasonable to use the two terms interchangeably, since normally the defendant alone may appeal a final determination in a criminal matter. An appeal by the State from a judgment of acquittal would, of course, offend the constitutional prohibition against placing a defendant twice in jeopardy for the same offense. *N.J.Const.* (1947), Art. I, par. 11. The drafters must have assumed that only a defendant could bring an appeal in a bastardy action. However, a bastardy proceeding is not criminal in nature, but has been variously described as *quasi*-criminal, *quasi*-civil and civil. *See F. v. M.,* 96 *N.J.Super.* 335, 340 (App.Div.1967) (civil for most purposes); *Montclair Overseer of Poor v. Eason,* 92 *N.J.L.* 199, 202 203 (E. & A.1918) (civil); *Thatcher v. Hackett,* 16 *N.J.Misc.* 459, 1 *A.2d* 438 (Ct.Qtr.Sess.1938).

■■ We therefore conclude that the rule was intended to conform with the statutory grant of a right to trial by jury to "either party," but erroneously limited that right to the "defendant" through a misapprehension of the nature of the proceeding. Therefore, we construe the rule, in light of its proclaimed intent to add the statutory right, to permit either party to demand a jury trial. Rules of court, like statutes, should be interpreted to effect their intent.

■ To read the rule, as defendant urges, to permit only defendant-appellant to demand trial by jury would lead to an incongruous result. The drafters could hardly have envisioned that a defendant who lost below would be entitled to demand a

jury trial, while a defendant-respondent who had prevailed below would be denied that right. A rule of court, no less than a statute, should be interpreted to avoid absurd or anomalous results.

## II

Plaintiff asserts that any construction of *R.* 4:74 6 which limits *N.J.S.A.* 9:17 20's grant of a right to a jury trial to "either party" would violate the constitution. *N.J.Const.* (1947) Art. I, par. 9, provides: "The right of trial by jury shall remain inviolate." This article has been construed to guarantee the right of trial by jury only in those matters where it existed at common law at the time of the adoption of the New Jersey Constitution of 1776. *See Montclair v. Stanoyevich,* 6 *N.J.* 479, 484 (1951); *Steiner v. Stein,* 2 *N.J.* 367, 378 379 (1949); *Peterson v. Albano,* 158 *N.J.Super.* 503 (App.Div.1978). The constitution preserves only whatever right to trial by jury existed in 1776, not in 1947, as plaintiff contends. *Montclair, supra,* 6 *N.J.* at 485, 487 488.

Therefore, if a right to trial by jury in appeals from bastardy proceedings existed at common law in 1776, then that right cannot be impaired by court rule. *See Hinchly v. Machine,* 15 *N.J.L.* 476 (Sup.Ct.1836).

Unfortunately, the only judicial discussion of the existence of such a right in 1776 is dictum. In *F. v. M.,* 96 *N.J.Super.* 335 (App.Div.1967), Judge Lewis commented, after quoting a criticism of the use of the jury in "the emotion-charged arena that is the bastardy proceeding":

> . . . That there is merit to the point none would deny, but we are not here to consider whether or not this action should have been tried by a jury. That issue resides with the people in their capacity to amend the Constitution and abrogate the *practice initiated under the common law.* [Emphasis supplied]

While Judge Lewis cited no authority for his conclusion that the practice was "initiated under the common law," it is undeniably of ancient vintage. *N.J.S.A.* 9:17 20 is "the current version

in the unbroken line of bastardy statutes which originated with the enactment of the act of February 26, 1795, (*Rev.* 1821, p. 171)." *Leonard v. Werger,* 21 *N.J.* 539, 541 (1956).

The revision of 1898 contained a provision for appeal to the court of quarter sessions of the county in which the trial had taken place, providing at § 14 that "at the request of either party the case shall be tried before a jury in the same manner as before said magistrate." *L.* 1898 at 964. This provision was derived from similar language found in the *Revision of* 1877 at 70, which, in turn, derives through a series of enactments, from "An act for the maintenance of bastard children," *Pat.* 1795 at 152; *Rev.* 1821 at 171. This act provided at paragraph 1 for an appeal to the "Court of general quarter-sessions, or of general sessions of the peace, to be holden in and for the county, where such order shall be taken." The appeal to the court of quarter-sessions, which was a superior court of general jurisdiction in criminal matters, *Thatcher v. Hackett,* 16 *N.J.Misc.* 459, 460 (Sup.Ct.1938), was understood from an early date to entail a trial *de novo* by that court. *State v. Bidleman,* 17 *N.J.L.* 20 (Sup.Ct.1839).

The 1795 act has even more remote antecedents. It ultimately derived from provisions of the Elizabethan Poor Law Act of 1576, 13 *Eliz. c.* 3, from which it selectively copied. *Dally v. Woodbridge Overseers,* 21 *N.J.L.* 491, 493 (Sup.Ct.1848). "We find no reason to doubt that the ancient practice in England was grounded in statutory provisions which placed jurisdiction in the justices of the peace, with appeal to the Sessions." *Borawick v. Barba,* 7 *N.J.* 393, 402 (1951). A colonial statute existed on the subject of bastardy, which was retained by the Constitution of 1776. *Borawick, supra* at 399 400. That statute, 14 *Geo.* III (1774), provided at § 27 for appeal to the court of quarter sessions, which was directed to "proceed to hear and determine the same in the usual manner." *Allinson, ed., Acts of the General Assembly of the Province of New Jersey,* 1702 1776

(1776), at 400 401. We thus conclude that a procedure existed at the time of the enactment of the Constitution of 1776 under which a party aggrieved by a determination of the justices of the peace in a bastardy case could appeal to the court of quarter sessions and obtain a new trial.

That either party could demand a new trial before the court of quarter sessions seems clear enough. But could either party demand a new trial before a jury? No case directly on point has been found, but some authority exists concerning the "usual Manner" of procedure before that court, to which the 1774 act referred.

> The Courts established by early settlers and by the Proprietors formed a portion, at least, of the basis of the judicial system of New Jersey, and a study of them throws light on a good many questions relating to the origin and jurisdiction of the courts today. The courts that were established when the two provinces were made one colony under the Crown, are the very same courts that were in operation when the Province became a State in 1776 . . .. [1 *Keasbey, Courts and Lawyers of New Jersey,* 161 (1912)]

The Courts of Sessions, or County Courts, were established in New Jersey by the General Assembly in 1675. *Keasbey, supra* at 100 *et seq.* The Courts of Sessions were continued under the Proprietors by the Provinces of East and West New Jersey. In 1682–83 the General Assembly of East New Jersey enacted legislation giving the Courts of Sessions jurisdiction over civil and criminal causes. The act specifically provided at paragraph 13 that "All trials shall be by the verdict of twelve men." *Keasbey, supra* at 124. In 1681 the General Assembly of West New Jersey enacted a statute providing for trial by jury of 12 in every court. *Keasbey, supra* at 145.

After the Proprietors' surrender to Queen Anne, the courts of New Jersey were established by a series of royal governors' ordinances. *See, generally, Francis, The Bibliography of the Colonial Law Books of New Jersey,* 14 *N.J.L.J.* 326 (1891); *Allinson, supra; Leaming and Spicer, Grants, Concessions and*

*Original Constitutions of the Province of New Jersey* (2 ed. 1881). "The courts of common law established by these ordinances . . . remained unchanged during the half century that elapsed between the last of the ordinances and the adoption of the Constitution in 1776. . . ." *Keasbey, supra* at 193. The ordinance of Lord Cornbury of 1705 simply established the times at which the Courts of Sessions should meet, assuming their prior existence. Later ordinances did not remove the right to trial by jury established under the Proprietors.

Therefore, we conclude that the usual procedure before the courts of quarter sessions prior to the Revolution gave all parties the right to demand a jury trial. Defendant's motion is therefore denied.