stated in the preceding paragraph such evidence should be equally inadmissible where the basis of the action is strict liability on the theory of unsafe design in manufacture.

■ 4. The refusal of the trial court to allow proof of the results of a simulated reenactment of the accident was not error. This lay in the sound discretion of the court, and we find no mistaken exercise of discretion.

■ 5. We find no error in the court's permitting the issue of contributory negligence to go to the jury nor in respect of the other assignments of error in relation to the court's charge to the jury.

Judgment affirmed.

## STATE IN THE INTEREST OF O. W.

STATE OF NEW JERSEY, COMPLAINANT-RESPONDENT, v. O. W., JUVENILE-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 8, 1970—Decided June 15, 1970.

Before Judges GOLDMANN, LEWIS and MATTHEWS.

Mr. *Norman L. Kline,* Assistant Deputy Public Defender, argued the cause for appellant (Mr. *Stanley C. Van Ness,* Public Defender, attorney).

Mr. *George A. Cluff,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph D. J. Gourley,* Passaic County Prosecutor, attorney).

Per Curiam. This is an appeal from a Juvenile and Domestic Relations Court order adjudging O. W. a juvenile delinquent, placing him on probation, and ordering him to pay $4 a week for the support of the illegitimate child born of Dolores F., payable through the probation department. The order further directed that the matter be transferred to the adult division of the probation department when O. W. became an adult.

The Public Defender advances two arguments on O. W.'s behalf, both alleged to constitute plain error. It is first claimed that the determination that O. W. was the father of Dolores' child was against the weight of the evidence, and secondly that the Juvenile and Domestic Relations Court has no authority to order a juvenile to contribute to the support of his child.

 We pass over the argument that the appeal should have been brought in the County Court because it concerns an order of filiation rather than an adjudication of delinquency. See *R.* 2:2–3(a) and 5:5–9(c); *N. J. S. A.* 9:17–20. The complaint charged O. W. with being a juvenile delinquent, and the court so found. The order of filiation and support was simply ancillary to that determination.

 O. W. argues that the determination was against the weight of the evidence. We find otherwise. Although Dolores did not fix the precise dates when she had relations with O. W., she testified to acts of sexual intercourse on seven, eight or more occasions at his home, beginning in the summer of 1966, and went on to say that she had never had relations with anyone else. O. W. produced his sister, who said she knew Dolores had a bad reputation for chastity in the community; she had heard that she had had intercourse with a lot of people. Defendant then testified and admitted that he had had intercourse with Dolores in

June and July of 1967, but not during August, September, October or November of that year. The judge was therefore called upon to assess credibility. We will not disturb his determination, for he could reasonably have found, on the basis of the testimony, that O. W. fathered the child. *State v. Johnson,* 42 *N. J.* 146, 162 (1964).

Under the second point, O. W. states that the Juvenile and Domestic Relations Court is a creature of the Legislature, with limited powers and jurisdiction. He argues that the scope of disposition available to it with respect to a juvenile offender is limited by *N. J. S. A.* 2A:4–37 (probation or commitment to some institution or to the State Board of Child Welfare), and by *N. J. S. A.* 2A:4–39, which provides that no adjudication upon the status of a child under 18 "shall operate to impose any of the civil disabilities ordinarily imposed by conviction * * *." Therefore, since neither statute mentions support payment by a juvenile, the order below was improper.

The argument is specious and reflects a very restricted view of the Juvenile and Domestic Relations Court's jurisdiction. That court clearly has the power to award support in a bastardy proceeding, *N. J. S. A.* 9 :17–12, and the statutes *in pari materia* should be construed together as a "unitary and harmonious whole, in order that each may be fully effective." *City of Clifton v. Passaic County Board of Taxation,* 28 *N. J.* 411, 421 (1958). To deny the court the exercise of its inherent power would be to thwart the rehabilitative object of the juvenile process — "to make men out of errant boys." *State in the Interest of Carlo,* 48 *N. J.* 224, 244 (1966) (Weintraub, C. J., concurring). Indeed, *In re El,* 26 *N. J. Misc.* 285, 290, 60 *A.* 2d 893 (Cty. Ct. 1948), held that the Juvenile and Domestic Relations Court has exclusive jurisdiction in a bastardy proceeding against a juvenile.

That the main purpose of filing the complaint against the juvenile was to adjudge him a juvenile delinquent should

not preclude the State, acting as *parens patriae,* from awarding support pursuant to its bastardy jurisdiction. "Considerations of judicial economy and litigant convenience, as well as potential *res judicata* problems, indicate the desirability of unitary litigation of such related claims." *Ferger v. Local 483,* 94 *N. J. Super.* 554, 565 (Ch. Div. 1967), aff'd o.b. 97 *N. J. Super.* 505 (App. Div. 1967), certif. den. 51 *N. J.* 181 (1968). *Cf. State v. Monahan,* 15 *N. J.* 34, 38 (1954).

Affirmed.